## Green & Willstatter

ATTORNEYS AT LAW
200 MAMARONECK AVENUE
SUITE 605
WHITE PLAINS, NEW YORK 10601

THEODORE S. GREEN
RICHARD D. WILLSTATTER

(914) 948-5656
FAX (914) 948-8730

E-MAIL: THEOSGREEN@MSN.COM

December 21, 2023

Hon. Kenneth M. Karas
United States District Court
300 Quarropas Street
White Plains, New York 10601

   re: *United States v. Anthony Burton*, 17-cr-480 (KMK)

Dear Judge Karas:

  This letter is submitted as a motion to reduce Anthony Burton's sentence pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10. Under Amendment 821 to the Sentencing Guidelines, made retroactive by the Sentencing Commission, see U.S.S.G. § 1B1.10(d) (Nov. 2023), the Guidelines range applicable to Mr. Burton's case has been lowered to 60 to 71 months. Under all the circumstances, a sentence of 60 months' imprisonment, the bottom of the newly reduced range, is appropriate.

  Although the requested order reducing Mr. Burton's sentence cannot take effect before February 1, 2024, *see id.* § 1B1.10(e)(2), the Guidelines explicitly authorize the Court to enter such an order any time after November 1, 2023. *See id.* § 1B1.10, comment. (n.7). Entering a sentence-reduction order under Amendment 821 prior to February 1, 2024, will allow the Bureau of Prisons to ensure that Mr. Burton can participate in reentry programs and transitional services (such as placement in a halfway house), and permit the Probation Department to prepare properly for post-release monitoring after that date. We therefore ask the Court to reduce Mr Burton's sentence to 60 months at this time.

## A.   The Amended Guidelines

  Amendment 821 to the Guidelines went into effect on November 1, 2023. The Amendment made "targeted changes" to reduce the impact of providing additional criminal history points for offenders under a criminal justice sentence (commonly

1

known as "status points"). Part A of the amendment addresses "status points" for offenders, namely the additional criminal history points given to offenders for the fact of having committed the instant offense while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. The amendment limits the overall criminal history impact of "status points" in two ways. First, as revised, the "status points" provision under redesignated subsection (e) applies only to offenders with more serious criminal histories under the guidelines by requiring that an offender have seven or more criminal history points under subsections (a) through (d) in addition to having been under a criminal justice sentence at the time of the instant offense. Offenders with six or fewer criminal history points under subsections (a) through (d) will no longer receive "status points." Second, the amendment also reduces from two points to one point the "status points" assessed for offenders to whom the revised provision applies.

With respect to the reason for the amendment, the Commission explained that after several research studies, the data persuasively showed that although criminal history is strongly associated with likelihood of future recidivism, status points add little to the overall predictive value associated with the criminal history score. *See* U.S. SENT'G COMM'N, REVISITING STATUS POINTS (2022), available at **https://www.ussc.gov/research/research-reports/revisiting-status-points**. *See* U.S.S.G. App. C, Amendment 821, Reason for Amendment.

"The Commission's action to limit the impact of 'status points' builds upon its tradition of data-driven evolution of the guidelines. As described in the Introduction to Chapter Four, the original Commission envisioned status points as 'consistent with the extant empirical research assessing correlates of recidivism and patterns of career criminal behavior' and therefore envisioned 'status points' as being reflective of, among other sentencing goals, the increased likelihood of future recidivism. *See* USSG Ch.4, Pt.A, intro. comment. The original Commission also explained, however, that it would 'review additional data insofar as they become available in the future.' The Commission's recent research suggests that 'status points' improve the predictive value of the criminal history score less than the original Commission may have expected, suggesting that the treatment of 'status points' under Chapter Four should be refined." *Id.*

The Commission, therefore, concluded that "accounting for status on a more limited basis continues to serve the broader purposes of sentencing while also addressing other concerns raised regarding the impact of status points." *Id*

Explaining the rationale for making the changes to the criminal history rules retroactive, the Commission wrote, "The purpose of these targeted amendments is to balance the Commission's mission of implementing data-driven sentencing policies

with its duty to craft penalties that reflect the statutory purposes of sentencing and to reflect 'advancement in knowledge of human behavior as it relates to the criminal justice process.' *See* 28 U.S.C. § 991(b). The Commission determined that the policy reasons underlying the prospective application of the amendment apply with equal force to individuals who are already sentenced." *See* U.S.S.G. App. C, Amendment 825, Reason for Amendment.

To determine the extent of a retroactive sentencing reduction under § 3582(c)(2) for an eligible defendant, a court "shall consider the factors set forth in 18 U.S.C. § 3553(a)" as well as "public safety consideration[s]" (including "the nature and seriousness of the danger to any person or the community that may be posed by a reduction") and the defendant's "post-sentencing conduct." U.S.S.G. § 1B1.10, comment. (n.1(B)). A defendant's sentence can be reduced to the minimum of the new, amended Guideline range. *See* U.S.S.G. § 1B1.10(b)(2)(A).

## B.    Mr. Burton Is Eligible for a Sentence Reduction

The Court originally sentenced Mr. Burton on May 24, 2018. At that time, the parties agreed and the Court found that the total offense level was 23 and that Mr. Burton was in criminal history category IV, resulting in a guidelines range of 70 to 87 months. The Court sentenced Mr. Burton to 70 months, the bottom of the then-applicable guidelines range.

Under the new Guidelines, however, Mr. Burton's criminal history points would be reduced from 8 to 6 points, and from category IV to category III. At offense level 23 and criminal history category III, the amended range is 60 to 71 months' imprisonment.

The Probation Department, in its supplemental presentence report of November 28, 2023, has correctly concluded that Mr. Burton is eligible for a sentencing reduction. Because the retroactively applicable Amendment 821 reduces Mr. Burton's applicable guideline range, he is eligible for a reduction in sentence to the bottom of the amended guideline range pursuant to §3582(c)(2); U.S.S.G. § 1B1.10(a)(1).

## C.    The Court Should Exercise its Discretion and Reduce Mr. Burton's Sentence to 60 Months

Mr. Burton was sentenced upon his plea of guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine base. 21 U.S.C. §§ 846, 841(b)(1)(B). The offense carries a mandatory minimum sentence of 60 months' imprisonment. The amount of drugs involved was between 28 and 112 grams. There

3

was no enhancement for role in the offense and firearms or other weapons were not involved.

As documented in the Probation Department's supplementary report (and conformed by counsel's recent telephone interview with Mr. Burton), he has participated in educational and work assignments, including through the Second Chance Pell initiative.[1] These include studies towards an associate's degree, with courses in business organization and management, introduction to math concepts, American literature, English composition, introduction to microeconomics, and resume management. Mr. Burton also took a vocational course in plumbing.  He has had various work assignment as a unit orderly.

Mr. Burton has also had four disciplinary sanctions.  Two of these were for possessing a cell phone (described in the Probation report as "Possessing a Hazardous Tool."[2]  One infraction was for possession of dangerous weapon and fighting and the last infraction (from February 8, 2022) was for possession of a dangerous weapon.  Mr. Burton has had no disciplinary sanctions for the past 22 months.

At the time of his original sentence, Mr. Burton was in a relationship with Shantell Jones. They have a young child together who was born with a serious health condition (documented in the original Probation Department presentence report) that requires ongoing medical attention.  Ms. Jones and Mr. Burton have advised that a surgical procedure is scheduled in the near future.

While in custody, Mr. Burton has maintained contact (including in-person visits) with Ms. Jones and their child. He and Ms. Jones both confirm that his release plan would include his residing with Ms. Jones and their child at her apartment in Yonkers. (Ms. Jones advises that she may be relocating soon to nearby New Rochelle, in which case Mr. Burton would reside with her there).

Mr. Burton is particularly interested in building on the plumbing training that he has received with the BOP, and he may well seek work in that field.  As noted, he has also gotten a head start on his post-secondary education through the Second Chance Pell program.  He is committed to reuniting with Ms. Jones and having an important role in the upbringing of his son.

---

[1]https://www.vera.org/publications/second-chance-pell-six-years-of-expanding-access-to-education-in-prison

[2]The Bureau of Prisons includes portable telephone in the definition of a hazardous tool. 21 C.F.R. 541.3.

4

Mr. Burton's success in navigating his way to program resources while in custody is commendable and a positive sign that he will adjust well on re-entry into the community. It also outweighs his disciplinary history, particularly as he has demonstrated good conduct at the facility for almost the past two years.

Upon release, Mr. Burton will also have support from his immediate family, including his sister Nicola Constantine and his brother Marcus Clare, who have submitted letters on his behalf and which are submitted herewith as Exhibit A.

There is nothing about Mr. Burton's case that would suggest that he presents a risk to public safety such that a reduction should not be granted. Moreover, overall his post-sentencing conduct weighs in favor of a reduction. *See* U.S.S.G. § 1B1.10, comment. (n.1(B)).

## D. Conclusion

Mr. Burton has already served the majority of his 70-month sentence. His projected release date is currently December 15, 2024. At the time the Court sentenced Mr. Burton in 2018, it could not have foreseen how the COVID pandemic and nationwide staffing shortages would impact the conditions of confinement and the severity of the punishment Mr. Burton would endure. For the above reasons, the Court should resentence Mr. Burton to 60 months' imprisonment under the authority of 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10.[3]

Motion is denied. While Mr. Burton qualifies for a lower sentence under Amendment 821, there are several reasons the Court will not exercise its discretion to impose the lower sentence he seeks. First, Mr. Burton's crimes were exceptionally serious. In addition to selling narcotics, Mr. Burton used a gun to threaten a perceived confidential informant. This happened while Mr. Burton was on parole for a manslaughter conviction. Second, while Mr. Burton has completed some rehabilitation

Respectfully submitted,

/s/ *Theodore S. Green*

Theodore S. Green

programs, he also has continued his violent ways in prison, twice having been found to be in possession of a weapon and once being involved in a fight. These facts outweigh the remaining mitigation claims made by Mr. Burton. Thus, because the sentence originally imposed is within the revised Guidelines, the application is denied.

cc: All counsel (by ECF)

So Ordered

1/26/24

[3]The Court may issue an order reducing the sentence under Amendment 821 any time after November 1, 2023. U.S.S.G. § 1B1.10, comment. (n.7). The sole limitation is that the order's "effective date" must be "February 1, 2024, or later." *Id* §1B1.10(e)(2). This simply means that while a court may reduce a sentence under Amendment 821 any time after November 1, 2023, the reduction cannot result in release from custody prior to February 1, 2024. *See* U.S.S.G. App. C, Amendment 825.

5